UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| Brandon L. Baxter, | ) | CASE NO. | 1:12 CR 238 |
| | ) | | 1:15 CV 2056 |
| | ) | | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN | |
| | ) | | |
| Vs. | ) | | |
| | ) | | |
| United States of America, | ) | **Memorandum of Opinion and Order** | |
| | ) | | |
| Defendant. | ) | | |

**INTRODUCTION**

This matter is before the Court upon petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 347). For the reasons that follow, the motion is DENIED.

**FACTS**

On May 3, 2012, petitioner and several co-defendants were charged in a three-count indictment with conspiracy to use a weapon of mass destruction, attempt to use a weapon of mass destruction, and aiding and abetting in malicious use of explosives to destroy a structure used in

1

interstate commerce. Petitioner pled guilty to all counts on September 5, 2012.[1]

At his change of plea hearing, petitioner agreed that the government could prove beyond a reasonable doubt that from February 20, 2012 to April 30, 2012, he conspired with co-defendants about using explosive devices against government property. Specifically, petitioner agreed that he and his co-defendants acquired a weapon of mass destruction and planned to use it to destroy the Brecksville-Northfield High Level Bridge, a state highway used in or affecting interstate commerce. Petitioner further agreed that on April 30, 2012, he and his co-defendants "placed a destructive device composed of two Improvised Explosive Devices (IEDs) containing C-4 plastic explosives at the base of the Brecksville-Northfield High Level Bridge." They then attempted to detonate the explosives from a remote location. (Doc. 156 at 1820-21). An FBI agent posing as an arms dealer, however, had supplied petitioner and his co-defendants with inert explosive devices, so the detonation was unsuccessful.

After petitioner's plea, the court held bifurcated hearings regarding sentencing. At the first hearing, the court heard oral argument about the sentencing calculations. Petitioner's counsel filed pre and post-hearing memoranda arguing, among other things, that the terrorism enhancement under Section 3A1.4 of the Sentencing Guidelines did not apply. On November 14, 2012, the court issued its order on the guidelines calculations. It found that the terrorism enhancement applied to petitioner and calculated his guideline range as 262 to 327 months.

The court sentenced petitioner on November 20, 2012. In advance of the hearing, petitioner's counsel filed a sentencing memorandum arguing that the court should apply a

---

[1] All previous proceedings in the district court were before retired Judge David Dowd.

downward variance because defendant had a traumatic childhood and is a reparable individual, the explosives were inert, and an FBI paid informant (the "confidential human source" or "CHS") played a major role in facilitating the offense. The court agreed with many of the arguments advanced by petitioner's counsel and sentenced petitioner to 117 months imprisonment and lifetime supervised release.

Petitioner filed a timely notice of appeal with the Sixth Circuit. He challenged the district court's application of the terrorism enhancement and argued that his sentence was procedurally unreasonable. The Sixth Circuit affirmed the district court's judgment on March 28, 2014. (Doc. 329); *United States v. Wright*, 747 F.3d 399 (6th Cir. 2014). The Supreme Court denied petitioner's petition for writ of certiorari on October 6, 2014. Petitioner now seeks relief pursuant to 28 U.S.C. § 2255. (Doc. 347). The government opposes petitioner's motion.

**STANDARD OF REVIEW**

A federal prisoner may challenge a sentence if it "was imposed in violation of the Constitution or laws of the United States ... or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. To prevail on a § 2255 motion, "the movant must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). The petitioner has the burden of "sustaining [his] contentions by a preponderance of the evidence." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

**DISCUSSION**

Petitioner attempts to collaterally attack his conviction on the basis that his trial counsel

3

was ineffective. He contends that trial counsel provided ineffective assistance because he: (1) misled petitioner concerning supervised release; (2) failed to explain the elements of an entrapment defense; (3) failed to sufficiently investigate petitioner's mental health; (4) failed to investigate exculpatory cell phone records and analyze discovery evidence; (5) failed to move for a continuance when he was unprepared for trial; and (6) misled petitioner by telling him that he would be punished if he exercised his right to a jury trial.

The Sixth Amendment guarantees a criminal defendant the right to effective counsel at all "critical stages" of the criminal process. *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012). To establish an ineffective assistance of counsel claim, a petitioner must prove that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The deficient performance prong requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In determining if counsel's performance was deficient, a court "must be highly deferential" and avoid the "distorting effects of hindsight." *Id.* at 689.

The prejudice prong requires the petitioner to show more than some conceivable effect on the judgment. *Id.* at 693. Rather, to prove that counsel's performance was prejudicial, there must be "a reasonable probability that, but for counsel's unprofessional errors, the rest of the proceeding would have been different." *Id.* at 694.  In the plea bargain context, to show prejudice, the petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When applying *Strickland,* if a court can more easily dispose

of an ineffective assistance claim based on lack of prejudice, the court should follow that route. *Watson v. Marshall*, 784 F.2d 722, 726 (6th Cir. 1985).

1. Term of supervised release

Defendant claims that defense counsel misled him about the amount of supervised release that he would face if he pled guilty to all of the charges. According to petitioner, counsel told petitioner that he would face a supervised release term of three to five years in accordance with 18 U.S.C. § 3583(b)(1) and (2). Petitioner does not submit any evidence showing that his counsel affirmatively misled him about the term of supervised release. He does point out, however, that his presentence investigation report indicated that his term of supervised release would be five years on the first two counts and three years on the third count. (*See* Doc 163 at 1930).

Nevertheless, the record shows that petitioner was on notice that he faced a possible lifetime supervised release term if the terrorism enhancement applied. At the change of plea hearing, the government indicated its intent to seek a term of lifetime supervised release if the Court applied the enhancement. After the government's statement of intent, the Court asked petitioner if he understood, and petitioner responded that he did:

> MR. BROWN: Just to specifically set forth the terms for the supervised release. For Counts 1 or 2, it would be a maximum of life. For count 3, I believe it's five years.
> THE COURT: Okay. Now, when it says a maximum of life, that doesn't mean the court has to give that much, but the court has to fix the period of supervised release if there's been a conviction. Do you understand?
> THE DEFENDANT: Yes.
> THE COURT: Any questions about that?
> THE DEFENDANT: No.

(Doc. 156 at 1834).

Petitioner was thus fully apprised of the possibility of lifetime supervised release and

5

agreed to plead guilty to all charges anyway. His first claim for relief fails because he cannot now claim that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

    2.    <u>Entrapment defense</u>

Next, petitioner claims that his trial counsel did not fully explain an entrapment defense and that, if petitioner had better understood the defense, he would have insisted on going to trial. Petitioner admits that counsel explained the two prongs of the entrapment defense, inducement and predisposition. Still, petitioner contends that if he "had been given proper advice he would have known that entrapment was a viable defense because there exists no evidence that would prove, beyond a reasonable doubt, that [he] was predisposed to commit the <u>charged crime</u>, <u>prior to contact with the government</u>." Petitioner asserts that the evidence would have shown that the CHS induced him into agreeing to the conspiracy and that the only evidence of predisposition the government could have offered was from his co-defendant Anthony Hayne, which would have been "highly impeachable."

The record demonstrates that defense counsel argued at every opportunity that the CHS manipulated the defendants and instigated the crime. Counsel also argued that, based on the CHS's own record, he could not be believed. *See, e.g.,* (Doc. 172 at 2075-76) (arguing that the terrorism enhancement should not apply because of the "extraordinary extent" to which the CHS prodded the defendants into engaging in the crime); (Doc. 179 at 2280) (Court responding to counsel's argument that the CHS easily manipulated the defendants: "And I know...you want to tell me how bad the CHS is, but you didn't–you pled guilty, so entrapment is not a defense. The CHS is obviously a facilitator, but a facilitator does not mean it's a defense."). This evidence in

6

the record, plus petitioner's own admission that counsel discussed an entrapment defense with him, belie his claim that defense counsel was deficient in failing to adequately address the viability of the defense.

In essence, the petitioner asks the Court to second-guess defense counsel's strategy decision that an entrapment defense would not be successful. But *Strickland* expressly prohibits a reviewing court from engaging in this type of hindsight. Rather, the court must review trial counsel's performance with a high degree of deference and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Moreover, as the Sixth Circuit has recognized, "[c]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6th Cir. 1993). Here, counsel's decision to advise petitioner to plead guilty rather than risk losing an entrapment defense at trial–a defense that is rarely successful–was reasonable in light of the testimony of petitioner's co-defendant Hayne. Hayne was prepared to testify that the group discussed obtaining explosives when the CHS was not present and that Hayne, who joined the group late, did not even meet the CHS until the day before the crime. *See United States v. Wright*, 747 F.3d 399, 406 (6th Cir. 2014) ("As the district court indicated, the defendants opted to plead guilty at least in part because they believed that Hayne's testimony effectively contradicted an entrapment defense.").

3.  Petitioner's Mental Health

Petitioner next argues that his "fragile mental condition made him especially susceptible to undue influence by the government's informant" and that counsel was ineffective for not investigating petitioner's mental health more thoroughly. As support, he notes that not long

7

before the events giving rise to this case occurred, he had been released from a mental health facility after a suicide attempt. He also claims that his time in a segregated housing unit after his incarceration "drove him to the epiphany that his psychological disorders are a mere symptom of a deeper psychosocial disorder, which impairs his ability to effectively communicate with others through verbal means." In his reply, petitioner clarifies that he is not arguing in this claim that he suffered a mental disease or defect that prevented him from assisting in his own defense.[2] Rather, this claim is focused exclusively on whether counsel was ineffective in failing to request a medical health evaluation for the purposes of an entrapment defense. Petitioner believes that an evaluation would have shown that he was particularly susceptible to inducement. (*See* Doc. 354 at 5369).

Like petitioner's preceding claim, this claim essentially asserts that trial counsel made a poor strategy decision to forego an entrapment defense. As noted above, this Court may not second-guess trial counsel's strategy decisions that were based on reasoned professional judgment. Moreover, petitioner's testimony shows that he was in a strong enough frame of mind while the bombing scheme was ongoing that he allegedly attempted to rebuff the CHS's efforts to engage him in the plot. (Doc. 180 at 2509, 2513) (testifying that he "went along with the [CHS's] discussions just to appease this man" and that he frequently ignored calls from the CHS and co-defendant Wright). Given petitioner's own admissions and the overwhelming evidence of

---

[2] The evidence in the record shows that petitioner understood the charges against him and that he was able to assist in his own defense. For example, at the November 6, 2012 hearing, petitioner was the only defendant to take the opportunity to testify on his own behalf. At that hearing, he provided detailed testimony about his involvement in the scheme; this testimony shows both that he understood the government's position and that he was able to offer facts in support of his own defense. (Doc. 180 at 2478-2565).

his guilt, counsel likely made the strategic decision to forego a mental health evaluation because it would not have been enough to support an entrapment defense, an extremely difficult defense to prove. Nor does petitioner's self-proclaimed diagnosis of psychosocial disorder cast doubt on trial counsel's decision not to ask for a competency determination.

Petitioner also cannot show prejudice from trial counsel's failure to request a mental health examination. The record has many examples of where petitioner's mental health history was presented to the court. The pre-sentence report discussed his childhood and admissions to psychiatric hospitals and treatment facilities, petitioner's sentencing memoranda addressed his mental health, and petitioner's father testified about petitioner's substance abuse history and how he had been manipulated as a child. (Docs. 163 at 1940-42; 174 at 2190; 249 at 3549-50). And petitioner himself testified about his mental history at the November 6 hearing. At the hearing, petitioner's counsel also raised the issue of petitioner's recent suicide attempt and his time at a mental health facility. (*Id.* at 2560-61).

The Court was sympathetic to petitioner's arguments about his mental health and vulnerability. In deciding to make a significant downward departure in petitioner's sentence, the court addressed many of the points raised by defense counsel and noted that petitioner's "troubling family history coupled with suicide attempts" justified the downward variance. (Doc. 206 at 3255).

Thus, petitioner has not shown that defense counsel was deficient in failing to further investigate his mental health or order a mental health evaluation or that counsel's performance prejudiced him.

9

### 4. Phone records and discovery evidence

Petitioner next claims that his counsel was ineffective because he did not thoroughly review certain discovery and did not properly track down telephone records. According to petitioner, the discovery at issue shows that the CHS and the FBI had a "coded" conversation that indicates the CHS told the FBI agent that the defendants "haven't ever actually agreed to anything." Petitioner does not identify a date when this alleged conversation occurred, and he produces no evidence of the conversation. His assertion that the conversation took place is based on his recollection from reviewing recordings and transcripts while he was in pretrial detention. As for the phone records, petitioner maintains that they would have shown that the CHS made a "voluminous amount of calls" to petitioner, many of which petitioner ignored. According to him, they also would have shown at least one voicemail that petitioner left the CHS evidencing petitioner's reluctance to engage in the scheme. Like his previous claims, petitioner believes that this evidence would have been material to an entrapment defense.

Petitioner cannot show that counsel was ineffective. Once again, this claim impermissibly asks the Court to use hindsight in reviewing defense counsel's decision not to pursue an entrapment defense.

The claim that counsel should have reviewed discovery records also fails because petitioner has not produced any evidence in support. Bare allegations are insufficient to support an ineffective assistance of counsel claim. *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (internal quotations and citations omitted) ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255."). Moreover, even assuming that counsel did not thoroughly review the transcripts and recordings, petitioner

cannot show prejudice from counsel's failure to obtain evidence of the alleged "coded" conversation. Assuming that the conversation actually took place, there was ample evidence in the record from which a jury could have nevertheless concluded that petitioner and his co-defendants did ultimately agree to the bridge-bombing plot. Indeed, at his change of plea hearing, petitioner admitted that the government could prove that he conspired with co-defendants to use explosive devices to blow up the Brecksville-Northfield High Level Bridge. "A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007).

Nor can petitioner show that counsel's decision not to request petitioner's phone records was unreasonable or that it prejudiced him. At the hearing to determine if the terrorism enhancement should apply, petitioner testified about the voicemail that he now refers to in his motion:

> I had–I believe on the 27th, I had made a phone call to him and I had left a message on his voice mail. I might have been intoxicated, and I do know I was depressed, a lot of crazy stuff. I got myself into a situation I didn't how to get out of...I had left a message on his voice mail letting him know that I felt this whole–this whole scenario, everything we are talking about wasn't going to achieve anything and it was stupid, that I didn't want to participate in it; and that if he wanted to talk to me, to call me. And so I could–I didn't want to elaborate over the phone what exactly we were talking about, so I wanted to–if he wanted to talk to me in person so we could talk about it, we could.

(Doc. 180 at 2513). In light of petitioner's admission that he was intoxicated when he left the message and the message's apparent vagueness, counsel very likely made the strategic decision not to subpoena the record of the voicemail because it would have been of little value. Petitioner also testified at the hearing that he often "blew off" the CHS and co-defendant Wright when they

11

tried to call him and that he ignored the CHS once he started a new job in mid-April. (*Id.* at 2511-14). Had petitioner gone to trial, he could have presented this same testimony under oath.

Petitioner simply has not shown how the evidence that he now wishes to explore would have rebutted the extensive evidence that the government could have presented in the form of audio recordings, video recordings, telephone calls, and testimony from a co-defendant. Thus, this claim fails because petitioner cannot show that there is a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result.

5.  Counsel's preparation

Next, petitioner claims that counsel was ineffective because he did not have adequate time to prepare and should have requested a continuance.[3] The record simply does not support petitioner's claim. Petitioner's counsel filed numerous briefs on his behalf and the transcripts of the many hearings held in this case show that counsel was thoroughly prepared and familiar with the relevant facts and law. Though the Court ultimately disagreed with counsel on a key issue in the case–whether the terrorism enhancement applied–"[t]he requirement that counsel be effective is not a result-oriented standard. Counsel is required to be competent, but not necessarily victorious." *Wiley v. Sowders*, 647 F.2d 642, 648 (6th Cir. 1981).

Petitioner also cannot show that any lack of preparation by counsel affected the proceedings. Petitioner admitted to detailed facts showing that he conspired to bomb the

---

[3] Petitioner asserts that trial counsel was distracted because he was working on another high-profile corruption case at the same time as his proceedings. In response, the government notes that counsel played an insignificant role in the corruption case. Neither side has produced any evidence in support of its assertions, so the Court will not consider this issue in addressing petitioner's claim.

Brecksville-Northfield High Level Bridge. Despite admitting to this serious crime, counsel was still successful in persuading the Court to grant a significant downward variance in petitioner's sentence, saving petitioner an additional 145 to 210 months of imprisonment.[4]

      6.      <u>Petitioner's decision to plead</u>

Lastly, petitioner claims that counsel was ineffective because counsel advised petitioner to plead guilty to avoid retribution from the Court for exercising his right to trial. According to petitioner, counsel told him that if all of the other defendants pled guilty and petitioner was the only one to proceed to trial, "this would 'not be taken well' by the court." Further, counsel allegedly told petitioner that the Court "wanted to get this case done and over with as soon as possible" and that if petitioner went to trial and was found guilty, the Court would sentence him harshly as a punishment. To show that counsel's advice was prejudicial, petitioner notes that his co-defendant Joshua Stafford received a similar sentence as petitioner even though he went to trial.

In addition to citing no evidence in support of this claim, the claim fails because petitioner did not challenge his plea on direct appeal. "It is well settled that a voluntary and

---

[4]    Petitioner states in his reply brief that the focus of this claim is on counsel's failure to adequately prepare for *trial*, not sentencing. (Dco. 354 at 5373). He relies on *United States v. Garner*, 507 F.3d 399 (6th Cir. 2007), in support. Any argument that counsel was unprepared for trial is inapposite given that petitioner decided not to go to trial and instead pled guilty to all charges. *Garner* is also inapposite because the defendant in that case did go to trial. In addition, the court was not addressing an ineffective assistance of counsel claim because the defendant did not raise one on appeal. *Id.* at 410 (Griffin, J., dissenting). In any event, as discussed above, the record is clear that trial counsel was well prepared at all stages of the proceedings.

13

intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked....And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotations omitted).

Further, the record shows that petitioner's plea was, in fact, voluntary and intelligent. A guilty plea entered by a defendant who is fully aware of the direct consequences of the plea is voluntary in a constitutional sense "unless induced by threats ..., misrepresentation ..., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A plea is intelligent when the district court verifies that the defendant understands the "applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Varner*, 598 F. App'x 389, 391 (6th Cir. 2015). "A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007).

The change of plea hearing transcript demonstrates that petitioner's plea was knowing and voluntary. At the outset, the Court informed petitioner that he was not required to plead guilty:

> THE COURT: Now, even though you've told me that it's your present intention to enter a plea of guilty today, I want to assure you that you're not required to plead guilty. I am going to have a rather lengthy discussion with you. It's probably going to take me about a half hour before I get to asking you for your pleas.

>And if by that time you've decided you want to go to trial, all you have to do is tell me, "Judge, I don't want to plead guilty, I want to go to trial," and I will say, "Fine, we will have a trial."
>
>Do you understand?
>
>THE DEFENDANT: Yes.
>
> ***
>
>THE COURT: Now, you also have in this case a constitutional right to trial by jury. But if you plead guilty, you in effect give up that constitutional right. Do you understand that?
>
>THE DEFENDANT: Yes.

(Doc. 156 at 1813-15). The Court then advised petitioner of the constitutional rights that he was giving up by pleading guilty and ensured that petitioner understood the elements and statutory penalty for each count against him. Petitioner admitted the truth of the government's factual basis for the charges and reiterated that his plea was made voluntarily, was an exercise of his own free will, and was free from force or threat. Finally, the Court gave a thorough explanation of how the sentencing guidelines work, including the Court's discretion to vary upward or downward from the sentencing range.

Petitioner's comparison to the sentence that his co-defendant Joshua Stafford received after going to trial is inapposite. The Court determined the appropriate sentences based on facts particular to each defendant; it did not rely on a formulaic or rote calculation. Petitioner thus cannot rely on a comparison to a differently situated defendant to support his argument that trial counsel was ineffective for advising him to plead guilty rather than go to trial.[5]

---

[5] Petitioner ends his motion with several pages of thoughts on how the government's witnesses were impeachable. Similarly, he ends his reply with several pages of thoughts on how entrapment was a viable defense. He does not

**CONCLUSION**

For the foregoing reasons, petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED. The Court finds that a hearing is unnecessary because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Wright v. U.S.*, 320 Fed. Appx. 421, 426 (6th Cir. 2009). Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

IT IS SO ORDERED.

Date:   12/18/15

/s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

---

present these thoughts in the context of a claim for relief. Even if he had, they would not support a valid claim because they do not show how petitioner's sentence "was imposed in violation of the Constitution or laws of the United States ... or ... in excess of the maximum authorized by law...." 28 U.S.C. § 2255. Further, as discussed above, petitioner's plea was knowing and voluntary, so he cannot now challenge the factual basis for his conviction or sentence.

16